IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CENTRO MEDICO
DEL TURABO, INC., HOSPITAL,**
Plaintiff

v.                                                                                        CIVIL NO. 06-1690(DRD)

**UNION GENERAL DE TRABAJADORES
LOCAL 1199,**
Defendant

**OPINION AND ORDER DENYING EX-PARTE TEMPORARY
RESTRAINING ORDER AND SETTING HEARING TO SHOW CAUSE**

Pending before the Court is plaintiff, Centro Medico del Turabo, Inc., d/b/a Hospital HIMA San Pablo's *Motion for a Temporary Restraining Order and/or Preliminary Injunction* (Docket No. 3) moving the Court to issue a TRO and/or Preliminary Injunction against named defendant. HIMA sustains that the TRO and/or Preliminary Injunction is warranted as a result of defendant's breach of the two Collective Bargaining Agreements (CBA) in effect between the parties as provided by Section 301 of the Labor Management Relations Act, (LMRA), 29 U.S.C. §§152 *et seq.* In support of its position, plaintiff sustains that the CBA currently effective via extensions as the parties were negotiating a new CBA, amongst the parties includes a broad grievance, arbitration and no-strike clauses and that all disputes, claims and controversies arising from the CBA interpretation and implementation must be referred to arbitration.

Further, HIMA affirms that the remedy sought is warranted pursuant to *Boys Markets, Inc.,v. Retail Cleks Union, Local 770*, 398 U.S. 235 (1970) since in said case the Supreme Court's decision recognized an exception to the anti-injunction provision of the Norris-LaGuardia Act, 29 U.S.C. §107, wherein an injunctive remedy could be issued to end strikes pending arbitration if the strike's underlying dispute or grievance is arbitrable. However, the Court notes that plaintiff has clung his hat sustaining that the instant underlying dispute is arbitrable exclusively on the fact that the Union has failed to identify or address the underlying issue in a letter mailed to HIMA dated June 30, 2006.

Although the Supreme Court has reiterated that doubts shall be resolved in favor of arbitrability, *United Steelworkers of America v. Warrior Gulf Navigation Co.*, 363 U.S. 574, 583 (1960), at this stage of the proceedings and with the evidence on the record, the Court harbors serious doubts as to classifying in ex-parte fashion, the underlying controversy as one arbitrable. The Court explains.

It is federal public policy that the arbitration of labor disputes under the terms of a CBA is an integral part of the collective bargaining process itself. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 578; see also, *Perez v. Water Resources Authority*, 87 PRR 110, 116 (1963). Further, public policy can be effectuated only if the procedures chosen by the parties under the CBA are fully respected by both, the union and the company. *Steelworkers of*

*America v. American Mfg. Co.*, 363 U.S. at 566; see also, *Perez v. Water Resources Authority*, 87 PRR at 117. Moreover, federal policy promotes industrial peace and stabilization through CBA's and a major criteria to achieve industrial peace is the inclusion of arbitration provisions within the agreements. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 578; see also, *Perez v. Water Resources Authority*, 87 PRR at 117. Further, CBA's constitute more than a mere contract between the parties, it is the generalized code of the industry that governs a myriad of cases between the employer and the union which cannot be **anticipated**, but which may be resolved through the grievance procedure of the labor contract. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 454-455 (1957); see also, *Perez v. Water Resources Authority*, 87 PRR at 117. Finally and most critical, the touchstone and/or the most critical of factors in interpreting the substantive arbitrability of a labor dispute is that "apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process."*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. **at** 581; see also, *Perez v. Water Resources Authority*, 87 PRR at 121. Finally, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. **at** 582-583. In *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 239, 241(1962) the Supreme Court clearly set forth that "whether or not" a party is "bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties".

The cardinal rule of labor law arbitrability set by the Supreme Court is rather simple, all matters which the parties disagree as to are covered within the scope of the grievance and arbitration procedure except those matters which the parties specifically exclude. After all, "doubts should be resolved in favor of coverage". It is the Court that determines the scope of arbitration. We are bound by this Rule relating to substantive arbitration which is the guiding star in determining the arbitrability of a labor controversy and consequently, as a district court trial judge we may not depart from such rule.[1] Finally, as stated previously, HIMA has made a feeble argument that the controversy is arbitrable because the union has conceded that the dispute is arbitrable based on that the Union failed to identify or address the underlying issue in a letter sent to HIMA notifying that a work-stoppage was to occur on July 13, 2006.

In the words of the Supreme Court:

> A District Court entertaining an action under §301 **may not grant injunctive relief** against concerted activity **unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the**

---

[1] The Rule is identical as far as Puerto Rican Law is concerned. *Perez v. Water Resources Authority*, 87 PPR at 121.

>   **contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike**.
>   (Emphasis added)(Citations omitted).

*Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. at 254. This is the law of the land, and this District Court must abide by it.

Plaintiff submitted as evidence a flyer prepared by the Union calling for the work-stoppage on Thursday, July 13, 2006 from 7:00 a.m. through 3:00 p.m. However, the information provided in the flyer raises serious doubts as to whether the underlying issue is arbitrable. The first ground for the work stoppage is the Union's claim for salary justice. That averment does not clarify whether salary justice is sought under the current negotiation of the new CBA or whether justice is sought because the employer is not complying with its obligations of paying the salary under the CBA in effect. Secondly, the Union sustains that the employer is not complying with a local regulation and that now is the time to abide by a judgment issued by the courts. This statement clearly fails to provide any relevant information as to what is the alleged noncompliance with the local regulations nor it provides information as to whether the judgment issued is related to enforcing an award and/or a different issue relating to negotiating the CBA. Finally, the Union claims that it is time for the union members to be compensated according to the capacity and the quality of the work performed. This averment clearly fails to state whether the compensation sought arises because HIMA is not complying with the economic terms and conditions contained within the CBA or whether union members seek that the new CBA, which they are currently negotiating within an extension of the contract, contain higher pay scales and benefits.

Furthermore, *Buffalo Forge Co. v. United Steelworkers of America, AFL-CIO, et al.*, 428 U.S. 397 (1976), stands for the proposition that federal district courts have jurisdiction to issue an injunction preserving the *status quo* to restrain the actions of an employer **in aid of arbitration**. *Buffalo Forge Co.*, 428 U.S. at 405-407, as opposed to a violation of the no-strike clause. The Supreme Court determined that the **injunctive relief was not available in that particular case only because this issue was relating to a "sympathy strike" with another cause which issue** was not arbitrable amongst the parties before the court. But had the issue at *Buffalo Forge* been one covered by the grievance and arbitration procedure as to dispute relating to terms and conditions of employment, the injunction would have been granted in *Buffalo Forge*. See, *Buffalo Forge*, 428 U.S. at 405-406.

The *Buffalo Forge* court held that:

>   The issue in this case arises because the employer not only asked for an order directing the Union to arbitrate but prayed that the strike itself be enjoined pending arbitration and the arbitrator's decision whether the strike was permissible under the no-strike clause. Contrary to the Court of Appeals, the employer claims that despite the Norris-LaGuardia Act's ban on federal-court injunctions in labor disputes the District Court was empowered to enjoin the strike by s 301 of the Labor Management Relations Act as construed by Boys Markets v. Retail Clerks Union, supra. **This would undoubtedly have been the case had the strike been precipitated by a dispute between union and**

> **management that was subject to binding arbitration under the provisions of the contracts.** In *Boys Markets*, the union demanded that supervisory employees cease performing tasks claimed by the union to be union work. The union struck when the demand was rejected. The dispute was of the kind subject to the grievance and arbitration clauses contained in the collective-bargaining contract, and it was also clear that the strike violated the no-strike clause accompanying the arbitration provisions. The Court held that the union could be enjoined from striking over a dispute which it was bound to arbitrate at the employer's behest.
>
> **The holding in *Boys Markets* was said to be a "narrow one," dealing only with the situation in which the collective-bargaining contract contained mandatory grievance and arbitration procedures**. Id., at 253, 90 S.Ct., at 1594."(F)or the guidance of the district courts in determining whether to grant injunctive relief," the Court expressly adopted the principles enunciated in the dissent in *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962), including the proposition that "'(w)hen a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike**.' 398 U.S., at 254, 90 S.Ct., at 1594 (emphasis in *Sinclair* ).
>
> **The driving force behind *Boys Markets* was to implement the strong congressional preference for the private dispute settlement mechanisms agreed upon by the parties. Only to that extent was it held necessary to accommodate §4 of the *Norris-LaGuardia* Act to §301 of the Labor Management Relations Act and to lift the former's ban against the issuance of injunctions in labor disputes**. Striking over an arbitrable dispute would interfere with and frustrate the arbitral processes by which the parties had chosen to settle a dispute. The quid pro quo for the employer's promise to arbitrate was the union's obligation not to strike over issues that were subject to the arbitration machinery. Even in the absence of an express no-strike clause, an undertaking not to strike would be implied where the strike was over an otherwise arbitrable dispute. *Gateway Coal Co. v. Mine Workers*, supra; *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Otherwise, the employer would be deprived of his bargain and the policy of the labor statutes to implement private resolution of disputes in a manner agreed upon would seriously suffer.

*Buffalo Forge Co. v. United Steelworkers of America, AFL-CIO, et al.*, 428 U.S. at 405-407 (emphasis added). Evidently, if an injunctive remedy is to be issued, the Court must first ascertain that the issues underlying the protected activity are arbitrable as contained within the CBA. In the instant case, plaintiff has failed from its submittal to demonstrate that the Union must be enjoined from the planned work-stoppage because the underlying issue is in fact arbitrable. *Independent Oil*

*and Chemichal Workers of Quincy, Inc., v. Procter & Gamble Manufacturing Company*, 864 F.2d 927, 930 (1st Cir. 1988)(citing *Boys Markets*, 398 U.S. at 247-249). Merely alleging that the union has agreed that the issue is arbitrable because it failed to address said issue in a letter addressed to HIMA does not meet the required threshold of preponderance of the evidence.

Finally, the court points that Chapter 7 of the Labor Management Relations Act, 29 U.S.C. §158(g), in its relevant parts provides:

> **(g) Notification of intention to strike or picket at any health care institution**
>
> A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention, except that in the case of bargaining for an initial agreement following certification or recognition the notice required by this subsection shall not be given until the expiration of the period specified in clause (B) of the last sentence of subsection (d) of this section. The notice shall state the date and time that such action will commence. The notice, once given, may be extended by the written agreement of both parties.

Therefore, inasmuch the June 30, 2006, letter sent by the Union to HIMA, complies with this requirement, the Union has prima facie show compliance with the law with the ten days notice of a work stoppage required under 29 U.S.C. §158(g). However, this should not be deemed as the Court determining that the instant underlying controversy is not covered by the CBA or that it is non-arbitrable.

The Union is forewarned that a sporadic work stoppage against the Hospital violates the no-strike, no stoppage clause at Art. VII which clearly states that the Union will not sponsor any strikes or work stoppages which may interrupt the operations of the Hospital. Since the Hospital operates continuosly for 24 hours, a work stoppage in the individual union members free time violates the no-strike clause. Although the concerted activity may not be enjoinable because the concerted activity may not be arbitrable, said conduct may notwithstanding, constitute a violation of the CBA wherein damages may ensue pursuant to §301 of the Taft-Harley Act. The Union and its members cannot enjoy all the benefits of an extended contract but at the same time violate one of its obligations. (*i.e.*, not to sponsor and engage in work stoppages.)

**The Court therefore DENIES the Ex-parte Injunctive relief but sets forth a Hearing to Show Cause to the parties showing cause that the sporadic work stoppages are exempt or are covered under the CBA grievance procedure.[2] The Hearing is set for the 13th day of July 2006**

---

[2] The Court also **DENIES** the Ex-parte TRO because of failure to comply with Rule 65, Fed.R.Civ.P., provisions as to nature of seeking Ex-parte injunctive relief. In its relevant parts, Rule 65(b)(2) provides that an Ex-parte TRO may be granted if: "the applicant's attorney certifies to the court in writing the efforts, if any, which have

**at 9:00 a.m. The parties are forewarned that the federal judiciary does not provide court's interpreter services in civil federal proceedings. Therefore, should either party requires certified interpreter's services for the Hearing, said party shall make proper arrangements at their expense. The Hearing shall not be continued for lack of availability of certified interpreter.[3]**

**HIMA is to serve copy of this Opinion and Order upon the defendants and all of their agents by 5:00 p.m on July 12, 2006. An informative motion in compliance with this Order shall be filed on or before July 13, 2006 at 8:00 a.m.** Further, HIMA's *Motion Requesting Temporary Waiver of Local Rule 10(b)* (Docket No. 2) is hereby **GRANTED** hence HIMA is granted until **July 20, 2006**, to file the corresponding certified English translations. Similarly, HIMA's *Motion for Appointment of Person to Serve Process* (Docket No. 8) is **GRANTED**. **HIMA shall serve copy of the** *Verified Complaint* **(Docket No.1),** *Motion for a Temporary Restraining Order and/or Preliminary Injunction* **(Docket No. 3), and copy of this Opinion and Order upon the defendants and/or their agents.** Finally, defendant is granted **until August 4, 2006**, to appear with a counsel duly admitted to this Bar and submit its Answer to the Complaint and/or otherwise plead. **Absolutely any request for an extension of time shall be SUMMARILY DENIED AND DEFAULT AGAINST THE DEFENDANT SHALL BE ENTERED.**

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 12th day of July 2006.

S/DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

---

been made to give the notice and the reasons supporting the claim that notice should not be required." Said certification is not provided in the request.

[3] The U.S. District Court's web page provides a list of certified court interpreters.